## UNITED STATED DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## EASTERN DIVISION

| | |
|---|---|
| **DAVID GRAY**, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Case No. _____ |
| v. | **CLASS ACTION COMPLAINT** |
| **CENTRAL STATE BANK,** | **JURY DEMAND** |
| Defendant. | |

Plaintiff David Gray ("Plaintiff"), brings this Class Action Complaint against Defendant Central State Bank ("Defendant"), and alleges as follows:

### INTRODUCTION

1.      This case concerns Defendant's unlawful business practice of assessing (1) $32.00 overdraft fees ("OD Fees") on transactions that did not overdraw the account, and (2) multiple fees on an item.

2.      These practices breach promises made in Defendant's adhesion contract, which includes, upon information and belief, the Overdraft Opt-In Form[1], attached hereto as **Exhibit A**, and the Fee Schedule attached hereto as **Exhibit B**, (collectively, the "Contract").

3.      Plaintiff and other customers of Defendant have been injured by Defendant's improper fee maximization practices. Plaintiff, individually and on behalf of the classes of individuals preliminarily defined below, brings claims for Defendant's breach of contract, including the duty of good faith and fair dealing.

---

[1] Federal regulators require banks and credit unions to use an overdraft opt-in form substantially similar to the overdraft opt-in form for ATM and one-time debit card transactions attached hereto as Exhibit A. 12 C.F.R. § 1005.17(b)(1).

1

**PARTIES**

4.      Plaintiff is a citizen of Iowa and a resident of Saint Olaf, Clayton County, Iowa.

Plaintiff maintained a checking account with Defendant at all times relevant hereto.

5.      Defendant is a bank with more than $470 million in assets. It is a citizen of Iowa

with its headquarters and principal place of business in Coralville, Johnson County, Iowa, which

is in this District. Defendant is engaged in the business of providing retail banking services to

consumers at its 6 locations in Iowa.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest

and costs, and is a class action in which at least one member of the classes is a citizen of a State

different from the Defendant. The number of members of the proposed Classes in aggregate

exceeds 100 accountholders. 28 U.S.C. § 1332(d)(5)(B).

7.      This Court has personal jurisdiction over the Defendant because it resides in,

regularly conducts and/or solicits business in, engages in other persistent courses of conduct in,

and/or derives substantial revenue from products and/or services provided to persons in this

District.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant

resides in this District and a substantial part of the events or omissions giving rise to the claims

occurred in this District—where Defendant maintains its headquarters.

**BACKGROUND FACTS**

2

9.      In 2021, the largest financial institutions in America charged customers almost $11 billion in overdraft fees. Customers who carried an average balance of less than $350 paid 84% of these fees. *Why Poverty Persists in America* (The New York Times, Mar. 9, 2023), https://www.nytimes.com/2023/03/09/magazine/poverty-by-america-matthew-desmond.html.

10.     Because of this, industry leaders like Bank of America, Capital One, Wells Fargo, Alliant, and Ally have made plans to end the assessment of Overdraft Fees ("OD Fees") or Non-Sufficient Funds Fees ("NSF Fees") entirely. *See* Hugh Son, *Capital One to Drop Overdraft Fees for All Retail Banking Customers*, NBC News (Dec. 1, 2021), https://nbcnews.to/3DKSu2R; Paul R. La Monica, *Wells Fargo Ends Bounced Check Fees*, CNN (Jan. 12, 2022), https://bit.ly/3iTAN9k.

11.     Federal regulators have also taken action. For example, the Consumer Financial Protection Bureau (CFPB) recently fined Regions Bank $191 million, finding that it "acted unfairly and abusively" in violation of the Consumer Financial Protection Act of 2010 by assessing the same "surprise" fees at issue here. CFPB, Enforcement Actions, Regions Bank (Sep. 28, 2022), available at: https://www.consumerfinance.gov/enforcement/actions/regions-bank_2022 (last accessed Mar. 22, 2023).

12.     Through the imposition of these fees, Defendant has made substantial revenue to the tune of tens of millions of dollars, seeking to turn its customers' financial struggles into revenue.

I.      **DEFENDANT ASSESSES OD FEES ON TRANSACTIONS THAT DO NOT OVERDRAW THE ACCOUNT**

        **A. The Contract**

13.     Plaintiff has had a checking account with Defendant, which was governed by the Contract, at all times material hereto. *See* Exs. A and B.

14.     Upon information and belief, the Contract states that overdrafts occur "when you do not have enough money in your account to cover a transaction, but we pay it anyway." Ex. A.

15.     Defendant's Fee Schedule States:

> Overdraft Item Charges
>         Per Item Charge: $32.00
> Insufficient Funds Charges
>         Per Item Returned: $32.00

Ex. B at 1.

16.     In breach of these promises, Defendant assesses $32.00 Overdraft Item Charges when there is "enough money" in the account "to cover" the "transaction" as demonstrated by the account balance on Defendant's own bank statements.

### B. Plaintiff's Experience

17.     On or around March 28, 2022, Defendant charged Plaintiff a $30.00 OD Fee[2] on a purchase, even though, according to Defendant's own account statements, the balance in the account was positive after the purchase.

## II.     THE IMPOSITION OF MULTIPLE FEES ON AN ITEM VIOLATES DEFENDANT'S EXPRESS PROMISES AND REPRESENTATIONS

18.     Defendant unlawfully maximizes its already profitable fees through its deceptive and contractually-prohibited practice of charging multiple NSF Fees, or an NSF Fee followed by an Overdraft Fee, on an item.

19.     Unbeknownst to consumers, when Defendant reprocesses a check or other item for payment after it was initially rejected for insufficient funds, Defendant chooses to treat it as a new and unique item that is subject to yet another fee.

---

[2] Defendant has since increased its Overdraft Fee from $30.00 per item to $32.00 per item.

20.     The Federal Deposit Insurance Corporation (the "FDIC") has expressed concern with the practice of assessing multiple fees on an item. In 2012, the FDIC determined that one bank's assessment of more than one NSF Fee on the same item was a "deceptive and unfair act." *In the Matter of Higher One, Inc., Consent Order*, Consent Order, FDIC-1 1-700b, FDIC-1 1-704k, 2012 WL 7186313.

21.     The FDIC also recently recommended that the multiple fee practice be halted entirely. *See* Barbarino, Al. "FDIC Warns Banks About Risks of Bounced Check Fees." Law360, Aug. 19, 2022, *available at* https://www.law360.com/articles/1522501/fdic-warns-banks-about-risks-tied-to-bounced-check-fees.

22.     And, in its latest issue of Consumer Compliance Supervisory Highlights, the FDIC again addressed the charging of multiple non-sufficient funds fees for transactions presented multiple times against insufficient funds in the customer's account. *See FDIC Consumer Compliance Supervisory Highlights, Mar. 2022, available at* https://www.fdic/gov/news/financial-institution-letters/2022/fil22014.html. FDIC examiners have scrutinized this issue in recent exams, with some exams remaining open pending resolution of the issue.

23.     In the Supervisory Highlights, the FDIC discussed potential consumer harm from this practice in terms of both deception and unfairness under the Federal Trade Commission Act Section 5's prohibition on unfair or deceptive acts or practices. The FDIC stated that the "failure to disclose material information to customers about re-presentment practices and fees" may be deceptive. *Id*. at 8.

24.     During 2021, the FDIC identified consumer harm when financial institutions charged multiple NSF fees for the re-presentment of unpaid transactions. Terms were not clearly

4866-7997-5671, v. 1

defined and disclosure forms did not explain that the same transaction might result in multiple NSF fees if re-presented. While case-specific facts would determine whether a practice is in violation of a law or regulation, the failure to disclose material information to customers about re-presentment practices and fees may be deceptive. This practice may also be unfair if there is the likelihood of substantial injury for customers, if the injury is not reasonably avoidable, and if there is no countervailing benefit to customers or competition. For example, there is risk of unfairness if multiple fees are assessed for the same transaction in a short period of time without sufficient notice or opportunity for consumers to bring their account to a positive balance. *Id*.

25.     In its staff analysis of the issue, the American Bankers Association recommended that banks review their deposit account agreement to ensure it states clearly that a separate NSF fee will be assessed whenever the same item is resubmitted against insufficient funds. ABA also encouraged banks, if scrutinized by a regulator, to explain the significant logistical challenges with identifying items that have been resubmitted by the merchant for payment against insufficient funds. ABA is updating its staff analysis of this issue to reflect the Supervisory Highlights. *See* ABA Banking Journal, *FDIC provides guidance on multiple NSF fees for re-presented items*, April 1, 2022, available at https://bankingjournal.aba.com/2022/04/fdic-provides-guidance-on-multiple-nsf-fees-for-re-presented-items/.

26.     The CFPB similarly criticized banks' Multiple Fee practices in its Winter 2023 Supervisory Highlights. Specifically, the CFPB "found that institutions engaged in unfair acts or practices by charging consumers multiple NSF fees when the same transaction was presented multiple times." *Supervisory Highlights Junk Fees Special Edition* at 6. The CFPB elaborated: "[t]he assessment of multiple NSF fees for the same transaction caused substantial monetary harm to consumers, totaling millions of dollars. These injuries were not reasonably avoidable by

6

consumers, regardless of account opening disclosures. And the injuries were not outweighed by countervailing benefits to consumer or competition." *Id.* The CFPB encouraged financial institutions "to self-asses [their] compliance with Federal consumer financial law, self-report to the Bureau when [they identify] likely violations, remediate the harm resulting from these likely violations, and cooperate above and beyond what is required by law with these efforts." *Id.* at 7. (alternation in original, internal citation and quotation marks omitted).

27.     In April 2023, the Office of the Comptroller of the Currency ("OCC") joined in this condemnation in what it referred to as Representment Fee Practices:

> This practice of charging an additional fee each time a single transaction (e.g., ACH transaction or check) is presented for payment by a third party without further action by the customer contributes to customer costs in circumstances in which those customers cannot reasonably avoid the additional charges. Through ongoing supervision, the OCC has identified concerns with a bank's assessment of an additional fee on a representment transaction, resulting in findings in some instances that the practice was unfair and deceptive. Disclosures may be deceptive, for purposes of Section 5, if they do not clearly explain that multiple or additional fees (NSF or overdraft) may result from multiple presentments of the same transaction . . . Consumers typically have no control over when we returned ACH transaction or check will be presented again and lack knowledge of whether an intervening deposit will be sufficient to cover the transaction and related fees.

*OCC Bulletin 2023-12* at 6.

28.     State regulators likewise have noted that such Multiple Fee practices may be deceptive where the parties do not expressly agree "that multiple fees may be charged 'per item' or 'per transaction'" or where "the Institution represents that only one NSF fee will be charged 'per item' or 'per transaction' without disclosing that the same processed item may trigger Multiple NSF Fees." *Industry Letter: Avoiding Improper Practices Related to Overdraft and Non-Sufficient Fund Fees*, N.Y. DEPT. FIN. SERVS. 3 (July 12, 2022), https://on.ny.gov/3PNw2xH.

29.     Further, this abusive multiple fee practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not

7

undertake the practice of charging more than one fee on the same item when it is reprocessed. Instead, Chase charges one fee even if an item is reprocessed for payment multiple times,

30.     However, Defendant engages in this abusive and deceptive practice against the reasonable expectations of its customers.

31.     The Contract allows Defendant to take certain steps when paying a check other item when the accountholder does not have sufficient funds to cover it. Specifically, Defendant may (a) pay the item and charge a $32.00 fee; or (b) reject the item and charge a $32.00 fee[3].

32.     In contrast to the Contract, however, Defendant regularly assesses two or more $32.00 or $30.00 fees on an item.

### A. The Imposition of Multiple Fees on an Item Violates Defendant's Express Promises and Representations

33.     Plaintiff has had a checking account with Defendant, which was governed by the Contract at all times material hereto. See Exs. A -B.

34.     The Fee Schedule states:

> Overdraft Item Charges
>         Per Item Charge: $32.00
> Insufficient Funds Charges
>         Per Item Returned: $32.00

Ex. B at 1.

35.     This means that Defendant may assess a $32.00 "Overdraft Item" charge per item paid or a $32.00 "Insufficient Funds" charge per item returned.

---

[3] Subsequent to Plaintiff's April 2023 account statement, Defendant increased its Overdraft Item Charge and Insufficient Funds Charge from $30.00 per item to $32.00 per item.

4866-7997-5671, v. 1

36.     In breach of these promises, Defendant assesses multiple $32.00 Insufficient Funds Charges "Per Item" or a $32.00 Insufficient Funds Charge followed by a $32.00 Overdraft Item Charge "Per Item".

37.     This means that an item can be subject to up to $96.00 in charges "Per Item".

38.     The same "item" on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when – as here – Plaintiff took no action to resubmit it.

39.     There is zero indication anywhere in the contract that the same "item" is eligible to incur multiple fees.

40.     Even if Defendant reprocesses an instruction for payment, it is still the same "item." Its reprocessing is simply another attempt to effectuate an account holder's original order or instruction.

41.     Defendant and its customers never agreed that Defendant could assess multiple fees for a single check or other item that was returned for insufficient funds and later reprocessed one or more time and returned again.

42.     In sum, Defendant promised that one fee would be assessed on an item that the accountholder only presented once, and this term must mean all iterations of the same instruction for payment. As such, Defendant breached the Contract when it charged more than one fee per item.

43.     Reasonable consumers understand any given authorization for payment to be one, singular "item," as that term is used in the Contract.

44.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same item will be treated as the same "item,"

which Defendant will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account.

45.     Customers reasonably understand, based on the language of the Contract, that Defendant's reprocessing of checks and other items are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger fees. In other words, it is always the same item.

46.     Banks and credit unions like Defendant that employ this abusive practice require their accountholders to expressly agree to it.

47.     Community Bank, NA, discloses its fee practice in its online banking agreement, as follows:

> We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. **You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.**

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank N.A. 5 (Nov. 12, 2019), https://bit.ly/3uQafe7 (emphasis added).

48.      The Contract provides no such authorization, and actually promises the opposite— Defendant may charge, at most, a fee on an item.

**B.  Plaintiff's Experience**

49.     In support of Plaintiff's claim, Plaintiff offers examples of fees that should not have been assessed against Plaintiff's checking account. As alleged below, Defendant: (a) reprocessed a previously declined item; and (b) charged an additional fee upon reprocessing.

50.     On March 20, 2023, Plaintiff attempted a payment by check in the amount of $367.27.

10

51.     Defendant rejected payment of that item due to insufficient funds in Plaintiff's account and charged Plaintiff a $30.00 fee for doing so.

52.     Unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, on or around March 22, 2023, Defendant processed the same item again, rejected the item again and charged Plaintiff a second $30.00 fee.

53.     *In sum, Defendant charged Plaintiff $60 in fees on an item.*

54.     On March 20, 2023, Plaintiff *attempted* a payment by check in the amount of $336.41.

55.     Defendant rejected payment of that item due to insufficient funds in Plaintiff's account and charged Plaintiff a $30.00 fee for doing so.

56.     Unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, on or around March 22, 2023, Defendant processed the same item again, rejected the item again and charged Plaintiff a second $30.00 fee.

57.     *In sum, Defendant charged Plaintiff $60 in fees on an item.*

58.     Plaintiff understood these checks to each be a single item as is laid out in the Contract, capable of receiving, at most, a single fee if Defendant returned it, or a single fee if Defendant paid it.

## III.     <u>NONE OF THESE FEES WERE ERRORS</u>

59.     The improper fees charged by Defendant to Plaintiff's account were not errors by Defendant, but rather were intentional charges made by Defendant as part of its standard processing of transactions.

4866-7997-5671, v. 1

60.     Plaintiff therefore had no duty to report the fees as errors because they were not; instead, they were part of the systematic and intentional assessment of fees according to Defendant's standard practices.

61.     Moreover, any such reporting would have been futile as Defendant's own contract admits that Defendant made a decision to charge the fees.

### IV.     THE IMPOSITION OF FEES IN THIS MANNER BREACHES DEFENDANT'S DUTY OF GOOD FAITH AND FAIR DEALING

62.     Parties to a contract are required not only to adhere to the express terms of the contract but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied duty to act in accordance with account holders' reasonable expectations and means that the bank or credit union is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the bank or credit union has a duty to honor transaction requests in a way that is fair to its customers and is prohibited from exercising its discretion to pile on even greater penalties on its account holders.

63.     Here—in the adhesion agreements Defendant foisted on Plaintiff and its other customers— Defendant has provided itself numerous discretionary powers affecting customers' accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Defendant abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged improper fees.

64.     When Defendant charges improper fees, it uses its discretion to define the meaning of key terms in a way that violates common sense and reasonable consumer expectations. Defendant uses its contractual discretion to define that term to choose a meaning that directly causes more fees.

65.     Defendant abuses its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it assesses fees in this manner. By always assessing these fees to the prejudice of Plaintiff and other customers, Defendant breaches their reasonable expectations and, in doing so, violates its duty to act in good faith. This is a breach of Defendant's implied covenant to engage in fair dealing and to act in good faith.

66.     It was bad faith and totally outside of Plaintiff's reasonable expectations for Defendant to use its discretion to assess these fees.

67.     When Defendant charges improper fees in this way, Defendant uses its discretion to interpret the meaning of key terms in an unreasonable way that violates common sense and reasonable consumers' expectations. Defendant uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more fees.

## CLASS ACTION ALLEGATIONS

68.     Plaintiff brings this action individually and as a class action on behalf of the following proposed classes:

> **Account Balance Class:** All Defendant checking accountholders who, during the applicable statute of limitations, were charged Overdraft Fees on transactions that did not actually overdraw a checking account.

> **Multiple Fee Class:** All Defendant checking accountholders who, during the applicable statute of limitations, were assessed multiple fees on an item.

69.     Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

70.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes, if necessary, before this Court determines whether certification is appropriate.

4866-7997-5671, v. 1

71.     The time period for the Classes is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendant remedies the conduct complained of herein.

72.     The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identities of whom are within the exclusive knowledge of Defendant and can be readily ascertained only by resort to Defendant's records.

73.     The claims of Plaintiff are typical of the claims of the Classes in that Plaintiff, like all members of the Classes, was charged improper fees as set forth herein. Plaintiff, like all members of the Classes, has been damaged by Defendant's misconduct. Furthermore, the factual basis of Defendant's misconduct is common to all members of the Classes and represents a common thread of unlawful and unauthorized conduct resulting in injury to all members of the Classes. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other members of the Classes.

74.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes.

75.     Among the questions of law and fact common to the Classes include:

- Whether Defendant charged OD Fees on transactions that did not overdraw the account;

- Whether Defendant charged multiple fees on an item;

- Whether these practices breached the Contract and the duty of good faith and fair dealing;

- Whether Defendant was unjustly enriched as a result of its fee assessment practices;

- The proper method or methods by which to measure damages; and

- The declaratory and injunctive relief to which the Classes are entitled.

76.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions, particularly on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

77.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Classes will continue to suffer losses and Defendant's misconduct will proceed without remedy.

78.     Even if class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows for the consideration of claims which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

79.     Plaintiff suffers a substantial risk of repeated injury in the future. Plaintiff, like all Class members, is at risk of additional improper fees. Plaintiff and the Class members are entitled to injunctive and declaratory relief as a result of the conduct complained of herein. Money damages alone could not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to commit its unfair and illegal actions.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract including Breach of the Covenant of Good Faith and Fair Dealing)**
**(On Behalf of Plaintiff and the Account Balance Class)**

80.     Plaintiff incorporates by reference the preceding paragraphs.

81.     Plaintiff and Defendant have contracted for banking services as embodied in Defendant's Contract. Exs. A-B.

82.      All of Defendant's account holders, including Plaintiff and the members of the Account Balance Class, are subject to the Contract.

83.     All contracts entered by Plaintiff and the Account Balance Class are identical or substantively identical because Defendant's form contracts were used uniformly.

84.     Defendant misconstrued in the Contract its true fee practices and breached the express terms of the Contract.

85.     No contract provision authorizes Defendant to charge OD Fees on transactions that did not overdraw the account.

86.     Defendant breached the terms of its Contract by charging OD Fees on transactions that did not overdraw the account.

87.     Plaintiff and members of the Account Balance Class have performed all, or substantially all, of the obligations imposed on them under the agreements.

88.     Under Iowa law, good faith is an element of every contract between banks and/or credit unions and their customers because banks and credit unions are inherently in a superior

16

position to their checking account holders and, from this superior vantage point, they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

89.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

90.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain and abuse of a power to specify terms.

91.     Defendant abused the discretion it granted to itself when it charged OD Fees on transactions that do not actually overdraw the account.

92.      In these and other ways, Defendant violated its duty of good faith and fair dealing.

93.     Defendant willfully engaged in the foregoing conduct for the purpose of (1) gaining unwarranted contractual and legal advantages; and (2) unfairly and unconscionably maximizing fee revenue from Plaintiff and other members of the Account Balance Class.

94.     Plaintiff and members of the Account Balance Class have sustained damages as a result of Defendant's breach of the parties' contracts and breaches of contract through violations of the covenant of good faith and fair dealing.

### SECOND CLAIM FOR RELIEF
**(Breach of Contract including Breach of the Covenant of Good Faith and Fair Dealing)**
**(On Behalf of Plaintiff and the Multiple Fee Class)**

95.     Plaintiff incorporates by reference the preceding paragraphs.

17

96. Plaintiff and Defendant have contracted for banking services as embodied in Defendant's Contract. Exs. A-B.

97. All of Defendant's account holders, including Plaintiff and the members of the Multiple Fee Class, are subject to the Contract.

98. All contracts entered by Plaintiff and the Multiple Fee Class are identical or substantively identical because Defendant's form contracts were used uniformly.

99. Defendant misconstrued in the Contract its true fee practices and breached the express terms of the Contract.

100. No contract provision authorizes Defendant to charge multiple fees on an item.

101. Defendant breached the terms of its Contract by multiple fees on an item.

102. Plaintiff and members of the Multiple Fee Class have performed all, or substantially all, of the obligations imposed on them under the agreements.

103. Under Iowa law, good faith is an element of every contract between banks and/or credit unions and their customers because banks and credit unions are inherently in a superior position to their checking account holders and, from this superior vantage point, they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

104. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

4866-7997-5671, v. 1

105.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain and abuse of a power to specify terms.

106.     Defendant abused the discretion it granted to itself when it charged multiple fees on an item.

107.     In these and other ways, Defendant violated its duty of good faith and fair dealing.

108.     Defendant willfully engaged in the foregoing conduct for the purpose of (1) gaining unwarranted contractual and legal advantages; and (2) unfairly and unconscionably maximizing fee revenue from Plaintiff and other members of the Multiple Fee Class.

109.     Plaintiff and members of the Multiple Fee Class have sustained damages as a result of Defendant's breach of the parties' contracts and breaches of contract through violations of the covenant of good faith and fair dealing

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court:

a.  Certify this case as a class action, designating Plaintiff as class representative and designating the undersigned as Class Counsel;

b.  Award Plaintiff and the Classes actual damages in an amount according to proof;

c.  Award Plaintiff and the Classes restitution in an amount to be proven at trial;

d.  Award Plaintiff and the Classes pre-judgment interest in the amount permitted by law;

e.  Award Plaintiff and the Classes attorneys' fees and costs as permitted by law;

f.   Declare Defendant's practices outlined herein to be unlawful and a breach of contract;

g.   Enjoin Defendant from engaging in the practices outlined herein to the extent they breach the Contract;

h.   Grant Plaintiff and the Classes a trial by jury;

i.   Grant leave to amend these pleadings to conform to evidence produced at trial; and

j.   Grant such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

Dated: Nov. 13, 2024

Respectfully submitted,

BY: */s/ J. Barton Goplerud*
J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
SHINDLER, ANDERSON, GOPLERUD
& WEESE, P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Phone: (515) 223-4567
Fax: (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

Lynn A. Toops (*pro hac vice* forthcoming)
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: 317-636-6481
Facsimile: 317-636-2593
ltoops@cohenandmalad.com

J. Gerard Stranch, IV (*pro hac vice* forthcoming)
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419

gstranch@stranchlaw.com

Christopher D. Jennings (*pro hac vice* forthcoming)
JENNINGS PLLC
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
chris@jenningspllc.com

*Attorneys for Plaintiff and the Putative Classes*

4866-7997-5671, v. 1