**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| DAVID GRAY, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>CENTRAL STATE BANK,<br><br>    Defendant. | Civil Action No. 3:24-cv-00086-SMR-SBJ<br><br>**DEFENDANT'S ANSWER,**<br>**AFFIRMATIVE DEFENSES, AND**<br>**JURY DEMAND** |

COMES NOW the Defendant, Central State Bank, by and through undersigned counsel and for its Answer to Plaintiff's Complaint states as follows:

## INTRODUCTION

1.    This case concerns Defendant's unlawful business practice of assessing (1) $32.00 overdraft fees ("OD Fees") on transactions that did not overdraw the account, and (2) multiple fees on an item.

**ANSWER:** Central State Bank denies the allegations in Paragraph 1.

2.    These practices breach promises made in Defendant's adhesion contract, which includes, upon information and belief, the Overdraft Opt-In Form, attached hereto as **Exhibit A**, and the Fee Schedule attached hereto as **Exhibit B**, (collectively, the "Contract").

**ANSWER:**    Central State Bank denies the allegations in Paragraph 2 and further states that the exhibits attached to the Complaint as Exhibits A and B are either not the specific forms used by Central State Bank and/or were not the contract in place at the time of the alleged overdrafts in question.

3.      Plaintiff and other customers of Defendant have been injured by Defendant's improper fee maximization practices. Plaintiff, individually and on behalf of the classes of individuals preliminarily defined below, brings claims for Defendant's breach of contract, including the duty of good faith and fair dealing.

**ANSWER:** Central State Bank denies the allegations in Paragraph 3.

## PARTIES

4.      Plaintiff is a citizen of Iowa and a resident of Saint Olaf, Clayton County, Iowa. Plaintiff maintained a checking account with Defendant at all times relevant hereto.

**ANSWER:** Central State Bank admits that Plaintiff is a resident of Saint Olaf, Clayton County, Iowa, and that Plaintiff has maintained, and continues to maintain, a checking account at Central State Bank.

5.      Defendant is a bank with more than $470 million in assets. It is a citizen of Iowa with its headquarters and principal place of business in Coralville, Johnson County, Iowa, which is in this District. Defendant is engaged in the business of providing retail banking services to consumers at its 6 locations in Iowa.

**ANSWER:** Central State Bank admits that it is a citizen of the State of Iowa with its headquarters and principal place of business in Coralville, Johnson County, Iowa.  Central State Bank further admits that it provides retail banking services to qualified customers and that it currently has six branches in Iowa.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the classes is a citizen

of a State different from the Defendant. The number of members of the proposed Classes in aggregate exceeds 100 accountholders. 28 U.S.C. § 1332(d)(5)(B).

**ANSWER:**  Central State Bank denies that allegations contained in Paragraph 6. Central State Bank specifically denies that the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and Defendant affirmatively states that the amount allegedly in controversy for the all alleged putative class is approximately $16,018.00.

7.    This Court has personal jurisdiction over the Defendant because it resides in, regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District.

**ANSWER:** Central State Bank admits the allegations in Paragraph 7.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District—where Defendant maintains its headquarters.

**ANSWER:**  Central State Bank denies allegations serving as a basis for jurisdiction and therefore denies Paragraph 8, but admits that venue would be proper in this Court if jurisdiction existed.

## BACKGROUND

9.    In 2021, the largest financial institutions in America charged customers almost $11 billion in overdraft fees. Customers who carried an average balance of less than $350 paid 84% of these fees. *Why Poverty Persists in America* (The New York Times, Mar. 9, 2023), https://www.nytimes.com/2023/03/09/magazine/poverty-by-america-matthew-desmond.html.

**ANSWER:**  Plaintiff's citation to a news article that does not specifically address Central State Bank and/or its practices, procedures, and/or customers is irrelevant and inflammatory.  To the degree a response is required, Central State Bank denies the allegations contained in Paragraph 9 and any characterizations and/or inferences arising therefrom.

10.    Because of this, industry leaders like Bank of America, Capital One, Wells Fargo, Alliant, and Ally have made plans to end the assessment of Overdraft Fees ("OD Fees") or Non-Sufficient Funds Fees ("NSF Fees") entirely. *See* Hugh Son, *Capital One to Drop Overdraft Fees for All Retail Banking Customers*, NBC News (Dec. 1, 2021), https://nbcnews.to/3DKSu2R; Paul R. La Monica, *Wells Fargo Ends Bounced Check Fees*, CNN (Jan. 12, 2022), https://bit.ly/3iTAN9k.

**ANSWER:**  Plaintiff's citation to the practices of Bank of America, Capital One, Wells Fargo, Alliant, and Ally, none of which are Central State Bank, is irrelevant and inflammatory.  To the degree a response is required, Central State Bank denies the allegations contained in Paragraph 10 and any characterizations and/or inferences arising therefrom.

11.    Federal regulators have also taken action. For example, the Consumer Financial Protection Bureau (CFPB) recently fined Regions Bank $191 million, finding that it "acted unfairly and abusively" in violation of the Consumer Financial Protection Act of 2010 by assessing the same "surprise" fees at issue here. CFPB, Enforcement Actions, Regions    Bank    (Sep.    28,    2022),    available    at: https://www.consumerfinance.gov/enforcement/actions/regions-bank_2022 (last accessed Mar. 22, 2023).

**ANSWER:**  Plaintiff's citation to a regulatory action against Regions Bank, which is not Central State Bank, is irrelevant and inflammatory.  Central State Bank affirmatively

states that its practices relative to the charging of overdraft fees has never been the subject of any regulatory action, citation, and/or fines by any regulatory body against Central State Bank. To the degree a response is required, Central State Bank denies the allegations contained in Paragraph 11 and any characterizations and/or inferences arising therefrom.

12.     Through the imposition of these fees, Defendant has made substantial revenue to the tune of tens of millions of dollars, seeking to turn its customers' financial struggles into revenue.

**ANSWER:**   Central State Bank denies the allegations in Paragraph 12 and affirmatively states that the revenue generated from the practices complained of by the Plaintiff is approximately $16,018.00 over a multi-year period. Plaintiff's statement that Central State Bank has generated "tens of millions of dollars" is false and inflammatory.

13.     Plaintiff has had a checking account with Defendant, which was governed by the Contract, at all times material hereto. *See* Exs. A and B.

**ANSWER:** Central State Bank admits that Plaintiff has a checking account with Defendant and that that checking account is governed by a contract.  Central State Bank specifically denies that the exhibits attached to Plaintiff's Complaint are the contracts that governed Plaintiff's relationship with Central State Bank.

14.     Upon information and belief, the Contract states that overdrafts occur "when you do not have enough money in your account to cover a transaction, but we pay it anyway." Ex. A.

**ANSWER:**   Central State Bank denies the allegations in Paragraph 14 and affirmatively states that Plaintiff's citation to the language contained in Exhibit A is irrelevant as Exhibit A is not the contract that governed Plaintiff's relationship with Central State Bank.

15.     Defendant's Fee Schedule States:

Overdraft Item Charges
        Per Item Charge: $32.00
Insufficient Funds Charges
        Per Item Returned: $32.00

Ex. B at 1.

**ANSWER:** Central State Bank admits that its current overdraft and insufficient funds charge is $32. Central State Bank affirmatively states that, at the time of the overdrafts by Plaintiff, the charge was $30.

16.     In breach of these promises, Defendant assesses $32.00 Overdraft Item Charges when there is "enough money" in the account "to cover" the "transaction" as demonstrated by the account balance on Defendant's own bank statements.

**ANSWER:** Central State Bank denies the allegations in Paragraph 16.

17.     On or around March 28, 2022, Defendant charged Plaintiff a $30.00 OD Fee on a purchase, even though, according to Defendant's own account statements, the balance in the account was positive after the purchase.

**ANSWER:** Central State Bank denies the allegations in Paragraph 17. Central State Bank affirmatively states that, at the time of Plaintiff's overdrafts, there was not sufficient funds in the account to cover the charges and further that Plaintiff, at all times relevant hereto, had access to online banking which would have, prior to Plaintiff's attempts to overdraw his account, shown him there was insufficient funds in the account to cover the potential purchases.

18.    Defendant unlawfully maximizes its already profitable fees through its deceptive and contractually-prohibited practice of charging multiple NSF Fees, or an NSF Fee followed by an Overdraft Fee, on an item.

**ANSWER:** Central State Bank denies the allegations in Paragraph 18.

19.    Unbeknownst to consumers, when Defendant reprocesses a check or other item for payment after it was initially rejected for insufficient funds, Defendant chooses to treat it as a new and unique item that is subject to yet another fee.

**ANSWER:**  Central State Bank denies the allegations in Paragraph 19.

20.    The Federal Deposit Insurance Corporation (the "FDIC") has expressed concern with the practice of assessing multiple fees on an item. In 2012, the FDIC determined that one bank's assessment of more than one NSF Fee on the same item was a "deceptive and unfair act." *In the Matter of Higher One, Inc., Consent Order*, Consent Order, FDIC-1 1-700b, FDIC-1 1-704k, 2012 WL 7186313.

**ANSWER:**  Plaintiff's citation to a FDIC consent order concerning Higher One, Inc., which is not Central State Bank, is irrelevant and inflammatory.  Central State Bank affirmatively states that it is a state-chartered bank that is subject to regulatory oversight by the Iowa Division of Banking and the Federal Reserve, not the FDIC.  To the degree a response is required, Central State Bank denies the allegations in Paragraph 20 and any characterizations and/or inferences arising therefrom.

21.    The FDIC also recently recommended that the multiple fee practice be halted entirely. *See* Barbarino, Al. "FDIC Warns Banks About Risks of Bounced Check Fees." Law360, Aug. 19, 2022, *available at* https://www.law360.com/articles/1522501/fdic-warns-banks-about-risks-tied-to-bounced-check-fees.

**ANSWER:** Plaintiff's citation to a legal interpretation of an FDIC recommendation is irrelevant and inflammatory. Central State Bank affirmatively states that it is a state-chartered bank that is subject to regulatory oversight by the Iowa Division of Banking and the Federal Reserve, not the FDIC. To the degree a response is required, Central State Bank denies the allegations in Paragraph 21 and any characterizations and/or inferences arising therefrom.

22.    And, in its latest issue of Consumer Compliance Supervisory Highlights, the FDIC again addressed the charging of multiple non-sufficient funds fees for transactions presented multiple times against insufficient funds in the customer's account. *See FDIC Consumer Compliance Supervisory Highlights, Mar. 2022, available at* https://www.fdic/gov/news/financial-institution-letters/2022/fil22014.html. FDIC examiners have scrutinized this issue in recent exams, with some exams remaining open pending resolution of the issue.

**ANSWER:** Central State Bank affirmatively states that it is a state-chartered bank that is subject to regulatory oversight by the Iowa Division of Banking and the Federal Reserve, not the FDIC. Central State Bank further affirmatively states that neither of its regulators have ever cited Central State Bank for any improper practices relating to the charging of overdraft or insufficient funds fees. To the degree a response is required, Central State Bank denies the allegations in Paragraph 22 and any characterizations and/or inferences arising therefrom.

23.    In the Supervisory Highlights, the FDIC discussed potential consumer harm from this practice in terms of both deception and unfairness under the Federal Trade Commission Act Section 5's prohibition on unfair or deceptive acts or practices. The FDIC

stated that the "failure to disclose material information to customers about re-presentment practices and fees" may be deceptive. *Id*. at 8.

**ANSWER:** Central State Bank affirmatively states that it is a state-chartered bank that is subject to regulatory oversight by the Iowa Division of Banking and the Federal Reserve, not the FDIC. Central State Bank further affirmatively states that neither of its regulators have ever cited Central State Bank for any improper practices relating to the charging of overdraft or insufficient funds fees. To the degree a response is required, Central State Bank denies the allegations in Paragraph 23 and any characterizations and/or inferences arising therefrom.

24.    During 2021, the FDIC identified consumer harm when financial institutions charged multiple NSF fees for the re-presentment of unpaid transactions. Terms were not clearly defined and disclosure forms did not explain that the same transaction might result in multiple NSF fees if re-presented. While case-specific facts would determine whether a practice is in violation of a law or regulation, the failure to disclose material information to customers about re-presentment practices and fees may be deceptive. This practice may also be unfair if there is the likelihood of substantial injury for customers, if the injury is not reasonably avoidable, and if there is no countervailing benefit to customers or competition. For example, there is risk of unfairness if multiple fees are assessed for the same transaction in a short period of time without sufficient notice or opportunity for consumers to bring their account to a positive balance. *Id*.

**ANSWER:** Central State Bank affirmatively states that it is a state-chartered bank that is subject to regulatory oversight by the Iowa Division of Banking and the Federal Reserve, not the FDIC. Central State Bank further affirmatively states that neither of its regulators

have ever cited Central State Bank for any improper practices relating to the charging of overdraft or insufficient funds fees.  To the degree a response is required, Central State Bank denies the allegations in Paragraph 24 and any characterizations and/or inferences arising therefrom.

25.    In its staff analysis of the issue, the American Bankers Association recommended that banks review their deposit account agreement to ensure it states clearly that a separate NSF fee will be assessed whenever the same item is resubmitted against insufficient funds. ABA also encouraged banks, if scrutinized by a regulator, to explain the significant logistical challenges with identifying items that have been resubmitted by the merchant for payment against insufficient funds. ABA is updating its staff analysis of this issue to reflect the Supervisory Highlights. *See* ABA Banking Journal, *FDIC provides guidance on multiple NSF fees for re-presented items*, April 1, 2022, available at https://bankingjournal.aba.com/2022/04/fdic-provides-guidance-on-multiple-nsf-fees-for-re-presented-items/.

**ANSWER:** Plaintiff's citation to trade association publications is irrelevant and inflammatory.  To the degree a response is required, Central State Bank denies the allegations in Paragraph 25 and any characterizations and/or inferences arising therefrom.

26.    The CFPB similarly criticized banks' Multiple Fee practices in its Winter 2023 Supervisory Highlights. Specifically, the CFPB "found that institutions engaged in unfair acts or practices by charging consumers multiple NSF fees when the same transaction was presented multiple times." *Supervisory Highlights Junk Fees Special Edition* at 6. The CFPB elaborated: "[t]he assessment of multiple NSF fees for the same transaction caused substantial monetary harm to consumers, totaling millions of dollars. These injuries were not reasonably

avoidable by consumers, regardless of account opening disclosures. And the injuries were not outweighed by countervailing benefits to consumer or competition." *Id.* The CFPB encouraged financial institutions "to self-asses [their] compliance with Federal consumer financial law, self-report to the Bureau when [they identify] likely violations, remediate the harm resulting from these likely violations, and cooperate above and beyond what is required by law with these efforts." *Id.* at 7. (alternation in original, internal citation and quotation marks omitted).

**ANSWER:** Central State Bank affirmatively states that it is a state-chartered bank that is subject to regulatory oversight by the Iowa Division of Banking and the Federal Reserve. Central State Bank further affirmatively states that neither of its regulators have ever cited Central State Bank for any improper practices relating to the charging of overdraft or insufficient funds fees.  To the degree a response is required, Central State Bank denies the allegations in Paragraph 26 and any characterizations and/or inferences arising therefrom.

27.    In April 2023, the Office of the Comptroller of the Currency ("OCC") joined in this condemnation in what it referred to as Representment Fee Practices:

> This practice of charging an additional fee each time a single transaction (e.g., ACH transaction or check) is presented for payment by a third party without further action by the customer contributes to customer costs in circumstances in which those customers cannot reasonably avoid the additional charges. Through ongoing supervision, the OCC has identified concerns with a bank's assessment of an additional fee on a representment transaction, resulting in findings in some instances that the practice was unfair and deceptive. Disclosures may be deceptive, for purposes of Section 5, if they do not clearly explain that multiple or additional fees (NSF or overdraft) may result from multiple presentments of the same transaction . . . Consumers typically have no control over when we returned ACH transaction or check will be presented again and lack knowledge of whether an intervening deposit will be sufficient to cover the transaction and related fees.

*OCC Bulletin 2023-12* at 6.

**ANSWER:** Central State Bank affirmatively states that it is a state-chartered bank that is subject to regulatory oversight by the Iowa Division of Banking and the Federal Reserve. Central State Bank further affirmatively states that neither of its regulators have ever cited Central State Bank for any improper practices relating to the charging of overdraft or insufficient funds fees. To the degree a response is required, Central State Bank denies the allegations in Paragraph 27 and any characterizations and/or inferences arising therefrom.

28.     State regulators likewise have noted that such Multiple Fee practices may be deceptive where the parties do not expressly agree "that multiple fees may be charged 'per item' or 'per transaction'" or where "the Institution represents that only one NSF fee will be charged 'per item' or 'per transaction' without disclosing that the same processed item may trigger Multiple NSF Fees." *Industry Letter: Avoiding Improper Practices Related to Overdraft and Non-Sufficient Fund Fees*, N.Y. Dept. Fin. Servs. 3 (July 12, 2022), https://on.ny.gov/3PNw2xH.

**ANSWER:** Plaintiff's citation to state regulatory guidance from the State of New York, which has no connection to and/or bearing on Plaintiff's claims, is irrelevant and inflammatory. To the degree a response is required, Central State Bank denies the allegations in Paragraph 28 and any characterizations and/or inferences arising therefrom.

29.     Further, this abusive multiple fee practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one fee on the same item when it is reprocessed. Instead, Chase charges one fee even if an item is reprocessed for payment multiple times,

**ANSWER:** Plaintiff's citation to the practices of Chase, which is not Central State Bank, is irrelevant and inflammatory. To the degree a response is required, Central State Bank denies the allegations in Paragraph 29 and any characterizations and/or inferences arising therefrom.

30.    However, Defendant engages in this abusive and deceptive practice against the reasonable expectations of its customers.

**ANSWER:** Central State Bank denies the allegations in Paragraph 30.

31.    The Contract allows Defendant to take certain steps when paying a check other item when the accountholder does not have sufficient funds to cover it. Specifically, Defendant may (a) pay the item and charge a $32.00 fee; or (b) reject the item and charge a $32.00 fee.

**ANSWER:** Central State Bank affirmatively states that Plaintiff has not attached the contract that serves as the basis for its claim to the Complaint and therefore the citation to contract language is misleading. Central State Bank denies the allegations in Paragraph 31.

32.    In contrast to the Contract, however, Defendant regularly assesses two or more $32.00 or $30.00 fees on an item.

**ANSWER:** Central State Bank affirmatively states that Plaintiff has not attached the contract that serves as the basis for its claim to the Complaint and therefore the citation to contract language is misleading. Central State Bank denies the allegations in Paragraph 32.

33.    Plaintiff has had a checking account with Defendant, which was governed by the Contract at all times material hereto. See Exs. A -B.

**ANSWER:** Central State Bank affirmatively states that Plaintiff has not attached the

contract that serves as the basis for its claim to the Complaint.  Central State Bank affirmatively states that Plaintiff does have a checking account with Central State Bank and that the checking account is governed by a contract, just not the documents attached by Plaintiff to his Complaint.  Because Plaintiff's statement is misleading, Central State Bank denies the allegations in Paragraph 33.

33.    34.    The Fee Schedule states:

> Overdraft Item Charges
>        Per Item Charge: $32.00
> Insufficient Funds Charges
>        Per Item Returned: $32.00

Ex. B at 1.

**ANSWER:** Central State Bank admits that its current overdraft and insufficient funds charge is $32.  Central State Bank affirmatively states that, at the time of the overdrafts by Plaintiff, the charge was $30.  Because Plaintiff cites to a fee schedule that was not applicable at the time of Plaintiff's overdrafts, Central State Bank denies the allegations in Paragraph 34.

35.    This means that Defendant may assess a $32.00 "Overdraft Item" charge per item paid or a $32.00 "Insufficient Funds" charge per item returned.

**ANSWER:**  Central State Bank denies the allegations in Paragraph 35.

36.    In breach of these promises, Defendant assesses multiple $32.00 Insufficient Funds Charges "Per Item" or a $32.00 Insufficient Funds Charge followed by a $32.00 Overdraft Item Charge "Per Item".

**ANSWER:**  Central State Bank denies the allegations in Paragraph 36.

37.    This means that an item can be subject to up to $96.00 in charges "Per Item".

**ANSWER:** Central State Bank denies the allegations in Paragraph 37.

38.    The same "item" on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when – as here – Plaintiff took no action to resubmit it.

**ANSWER:** Central State Bank denies the allegations in Paragraph 38.

39.    There is zero indication anywhere in the contract that the same "item" is eligible to incur multiple fees.

**ANSWER:** Central State Bank denies the allegations in Paragraph 38.

40.    Even if Defendant reprocesses an instruction for payment, it is still the same "item." Its reprocessing is simply another attempt to effectuate an account holder's original order or instruction.

**ANSWER:** Central State Bank denies the allegations in Paragraph 40.

41.    Defendant and its customers never agreed that Defendant could assess multiple fees for a single check or other item that was returned for insufficient funds and later reprocessed one or more time and returned again.

**ANSWER:** Central State Bank denies the allegations in Paragraph 41.

42.    In sum, Defendant promised that one fee would be assessed on an item that the accountholder only presented once, and this term must mean all iterations of the same instruction for payment. As such, Defendant breached the Contract when it charged more than one fee per item.

**ANSWER:** Central State Bank denies the allegations in Paragraph 42.

43.    Reasonable consumers understand any given authorization for payment to be one, singular "item," as that term is used in the Contract.

**ANSWER:** Central State Bank denies the allegations in Paragraph 43.

44.    Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same item will be treated as the same "item," which Defendant will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account.

**ANSWER:**  Central State Bank denies the allegations in Paragraph 44.

45.    Customers reasonably understand, based on the language of the Contract, that Defendant's reprocessing of checks and other items are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger fees. In other words, it is always the same item.

**ANSWER:**  Central State Bank denies the allegations in Paragraph 45.

46.    Banks and credit unions like Defendant that employ this abusive practice require their accountholders to expressly agree to it.

**ANSWER:**  Central State Bank denies the allegations in Paragraph 46.

47.    Community Bank, NA, discloses its fee practice in its online banking agreement, as follows:

> We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. **You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.**

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank N.A. 5 (Nov. 12, 2019), https://bit.ly/3uQafe7 (emphasis added).

**ANSWER:**  Plaintiff's citation to the practices of Community Bank, NA, which is not Central State Bank, is irrelevant and inflammatory.  To the degree a response is required, Central State Bank denies the allegations in Paragraph 47.

48.    The Contract provides no such authorization, and actually promises the

opposite— Defendant may charge, at most, a fee on an item.

**ANSWER:** Central State Bank denies the allegations in Paragraph 48.

49.    In support of Plaintiff's claim, Plaintiff offers examples of fees that should not have been assessed against Plaintiff's checking account. As alleged below, Defendant: (a) reprocessed a previously declined item; and (b) charged an additional fee upon reprocessing.

**ANSWER:** Central State Bank denies the allegations in Paragraph 49.

50.    On March 20, 2023, Plaintiff attempted a payment by check in the amount of $367.27.

**ANSWER:**  Central State Bank admits that Plaintiff attempted to negotiate a check through the Bank for $367.27 when there was not sufficient funds in the account to cover the check.

51.    Defendant rejected payment of that item due to insufficient funds in Plaintiff's account and charged Plaintiff a $30.00 fee for doing so.

**ANSWER:**  Central State Bank admits that the $367.27 check was rejected due to insufficient funds and that a fee was charged pursuant to its contract with Plaintiff.

52.    Unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, on or around March 22, 2023, Defendant processed the same item again, rejected the item again and charged Plaintiff a second $30.00 fee.

**ANSWER:** Central State Bank admits the check for $367.27 represented and that there was still insufficient funds in Plaintiff's account to cover the check and that a fee was charged. Central State Bank denies that Plaintiff was not aware the check would represent and the remainder of the allegations in Paragraph 52.

53.    In sum, Defendant charged Plaintiff $60 in fees on an item.

**ANSWER:** Central State Bank admits that a total of $60 in fees were charged relative to the $367.27 check that Plaintiff attempted to pay through his account when there was not sufficient funds to do so.

54.    On March 20, 2023, Plaintiff *attempted* a payment by check in the amount of $336.41.

**ANSWER:** Central State Bank admits that Plaintiff attempted to negotiate a check through the Bank for $336.41 when there was not sufficient funds in the account to cover the check.

55.    Defendant rejected payment of that item due to insufficient funds in Plaintiff's account and charged Plaintiff a $30.00 fee for doing so.

**ANSWER:** Central State Bank admits that the $336.41 check was rejected due to insufficient funds and that a fee was charged pursuant to its contract with Plaintiff.

56.    Unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, on or around March 22, 2023, Defendant processed the same item again, rejected the item again and charged Plaintiff a second $30.00 fee.

**ANSWER:** Central State Bank admits the $336.41 represented and that there was still insufficient funds in Plaintiff's account to cover the check and that a fee was charged.  Central State Bank denies that Plaintiff was not aware the check would represent and the remainder of the allegations in Paragraph 56.

57.    In sum, Defendant charged Plaintiff $60 in fees on an item.

**ANSWER:** Central State Bank admits that a total of $60 in fees were charged relative to the $336.41 check that Plaintiff attempted to pay through his account when there was not sufficient funds to do so.

58.    Plaintiff understood these checks to each be a single item as is laid out in the Contract, capable of receiving, at most, a single fee if Defendant returned it, or a single fee if Defendant paid it.

**ANSWER:**  Central State Bank denies the allegations of Paragraph 58.

59.    The improper fees charged by Defendant to Plaintiff's account were not errors by Defendant, but rather were intentional charges made by Defendant as part of its standard processing of transactions.

**ANSWER:** Central State Bank denies the allegations of Paragraph 59.

60.    Plaintiff therefore had no duty to report the fees as errors because they were not; instead, they were part of the systematic and intentional assessment of fees according to Defendant's standard practices.

**ANSWER:** Central State Bank denies the allegations of Paragraph 60.

61.    Moreover, any such reporting would have been futile as Defendant's own contract admits that Defendant made a decision to charge the fees.

**ANSWER:** Central State Bank denies the allegations of Paragraph 61.

62.    Parties to a contract are required not only to adhere to the express terms of the contract but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied duty to act in accordance with account holders' reasonable expectations and means that the bank or credit union is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the bank or credit union has a duty to honor transaction requests in a way that is fair to its customers and is prohibited from exercising its discretion to pile on even greater penalties on its account holders.

**ANSWER:** Plaintiff's allegations in Paragraph 62 call for a legal conclusion.  To the degree a response is required, Central State Bank denies the allegations contained in Paragraph 62.

63.    Here—in the adhesion agreements Defendant foisted on Plaintiff and its other customers— Defendant has provided itself numerous discretionary powers affecting customers' accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Defendant abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged improper fees.

**ANSWER:** Central State Bank denies the allegations contained in Paragraph 63.

64.    When Defendant charges improper fees, it uses its discretion to define the meaning of key terms in a way that violates common sense and reasonable consumer expectations. Defendant uses its contractual discretion to define that term to choose a meaning that directly causes more fees.

**ANSWER:** Central State Bank denies the allegations contained in Paragraph 64.

65.    Defendant abuses its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it assesses fees in this manner. By always assessing these fees to the prejudice of Plaintiff and other customers, Defendant breaches their reasonable expectations and, in doing so, violates its duty to act in good faith. This is a breach of Defendant's implied covenant to engage in fair dealing and to act in good faith.

**ANSWER:**  Central State Bank denies the allegations contained in Paragraph 65.

66.    It was bad faith and totally outside of Plaintiff's reasonable expectations for Defendant to use its discretion to assess these fees.

**ANSWER:** Central State Bank denies the allegations contained in Paragraph 66.

67.    When Defendant charges improper fees in this way, Defendant uses its discretion to interpret the meaning of key terms in an unreasonable way that violates common sense and reasonable consumers' expectations. Defendant uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more fees.

**ANSWER:** Central State Bank denies the allegations contained in Paragraph 67.

68.    Plaintiff brings this action individually and as a class action on behalf of the following proposed classes:

> **Account Balance Class:** All Defendant checking accountholders who, during the applicable statute of limitations, were charged Overdraft Fees on transactions that did not actually overdraw a checking account.

> **Multiple Fee Class:** All Defendant checking accountholders who, during the applicable statute of limitations, were assessed multiple fees on an item.

**ANSWER:** Central State Bank admits that Plaintiff purports to bring a class action on behalf of himself and the putative class described in Paragraph 68.  The remaining allegations in Paragraph 68 constitute a legal conclusion to which no response is required.  To the extent a response is required, Central State Bank denies that this action meets the requirements of a class action and denies any remaining allegations in Paragraph 68.

69.    Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

**ANSWER:**  Central State Bank admits the Plaintiff purports to bring this action on behalf of himself and the putative class described in Paragraph 69.  The remaining allegations

in Paragraph 69 constitute legal conclusions to which no response is required. To the extent a response is required, Central State Bank denies this action meets the requirements of a class action and denies any remaining allegations in Paragraph 69.

70.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes, if necessary, before this Court determines whether certification is appropriate.

**ANSWER:** Central State Bank admits the Plaintiff purports to bring this action on behalf of himself and the putative class described in Paragraph 70. The remaining allegations in Paragraph 70 constitute legal conclusions to which no response is required. To the extent a response is required, Central State Bank denies this action meets the requirements of a class action and denies any remaining allegations in Paragraph 70.

71.    The time period for the Classes is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendant remedies the conduct complained of herein.

**ANSWER:** Central State Bank admits the Plaintiff purports to bring this action on behalf of himself and the putative class described in Paragraph 71. The remaining allegations in Paragraph 71 constitute legal conclusions to which no response is required. To the extent a response is required, Central State Bank denies this action meets the requirements of a class action and denies any remaining allegations in Paragraph 71.

72.    The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identities of whom are within the exclusive knowledge of Defendant and can be readily ascertained only by resort to Defendant's records.

**ANSWER:** Central State Bank admits the Plaintiff purports to bring this action on behalf of himself and the putative class described in Paragraph 72. The remaining allegations in Paragraph 72 constitute legal conclusions to which no response is required. To the extent a response is required, Central State Bank denies this action meets the requirements of a class action and denies any remaining allegations in Paragraph 72.

73.    The claims of Plaintiff are typical of the claims of the Classes in that Plaintiff, like all members of the Classes, was charged improper fees as set forth herein. Plaintiff, like all members of the Classes, has been damaged by Defendant's misconduct. Furthermore, the factual basis of Defendant's misconduct is common to all members of the Classes and represents a common thread of unlawful and unauthorized conduct resulting in injury to all members of the Classes. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other members of the Classes.

**ANSWER:** Central State Bank admits the Plaintiff purports to bring this action on behalf of himself and the putative class described in Paragraph 73. The remaining allegations in Paragraph 73 constitute legal conclusions to which no response is required. To the extent a response is required, Central State Bank denies this action meets the requirements of a class action and denies any remaining allegations in Paragraph 73.

74.    There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes.

**ANSWER:** Central State Bank admits the Plaintiff purports to bring this action on behalf of himself and the putative class described in Paragraph 74. The remaining allegations in Paragraph 74 constitute legal conclusions to which no response is required. To the extent

a response is required, Central State Bank denies this action meets the requirements of a class

action and denies any remaining allegations in Paragraph 74.

74.    75.    Among the questions of law and fact common to the Classes include:

- Whether Defendant charged OD Fees on transactions that did not overdraw the account;

- Whether Defendant charged multiple fees on an item;

- Whether these practices breached the Contract and the duty of good faith and fair dealing;

- Whether Defendant was unjustly enriched as a result of its fee assessment practices;

- The proper method or methods by which to measure damages; and

- The declaratory and injunctive relief to which the Classes are entitled.

**ANSWER:**  Central State Bank admits the Plaintiff purports to bring this action on

behalf of himself and the putative class described in Paragraph 75.  The remaining allegations

in Paragraph 75 constitute legal conclusions to which no response is required.  To the extent

a response is required, Central State Bank denies this action meets the requirements of a class

action and denies any remaining allegations in Paragraph 75.

76.    Plaintiff is committed to the vigorous prosecution of this action and has

retained competent counsel experienced in the prosecution of class actions, particularly on

behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate

representative and will fairly and adequately protect the interests of the Classes.

**ANSWER:**  Central State Bank admits the Plaintiff purports to bring this action on

behalf of himself and the putative class described in Paragraph 76.  The remaining allegations

in Paragraph 76 constitute legal conclusions to which no response is required. To the extent a response is required, Central State Bank denies this action meets the requirements of a class action and denies any remaining allegations in Paragraph 76.

77.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Classes will continue to suffer losses and Defendant's misconduct will proceed without remedy.

**ANSWER:** Central State Bank admits the Plaintiff purports to bring this action on behalf of himself and the putative class described in Paragraph 77. The remaining allegations in Paragraph 77 constitute legal conclusions to which no response is required. To the extent a response is required, Central State Bank denies this action meets the requirements of a class action and denies any remaining allegations in Paragraph 77.

78.     Even if class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows for the consideration of claims which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

**ANSWER:**  Central State Bank admits the Plaintiff purports to bring this action on behalf of himself and the putative class described in Paragraph 78.  The remaining allegations in Paragraph 78 constitute legal conclusions to which no response is required.  To the extent a response is required, Central State Bank denies this action meets the requirements of a class action and denies any remaining allegations in Paragraph 78.

79.    Plaintiff suffers a substantial risk of repeated injury in the future. Plaintiff, like all Class members, is at risk of additional improper fees. Plaintiff and the Class members are entitled to injunctive and declaratory relief as a result of the conduct complained of herein. Money damages alone could not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to commit its unfair and illegal actions.

**ANSWER:**  Central State Bank admits the Plaintiff purports to bring this action on behalf of himself and the putative class described in Paragraph 79.  The remaining allegations in Paragraph 79 constitute legal conclusions to which no response is required.  To the extent a response is required, Central State Bank denies this action meets the requirements of a class action and denies any remaining allegations in Paragraph 79.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract including Breach of the Covenant of Good Faith and Fair Dealing)**
**(On Behalf of Plaintiff and the Account Balance Class)**

80.    Plaintiff incorporates by reference the preceding paragraphs.

**ANSWER:**  Central State Bank incorporates its responses to Paragraphs 1 through 79.

81.    Plaintiff and Defendant have contracted for banking services as embodied in Defendant's Contract. Exs. A-B.

**ANSWER:** Central State Bank affirmatively states that Plaintiff has not attached the

contract that serves as the basis for his claim to the Complaint.  Central State Bank affirmatively states that Plaintiff does have a checking account with Central State Bank and that the checking account is governed by a contract, just not the documents attached by Plaintiff to his Complaint.  Central State Bank denies the allegations in Paragraph 81.

82.    All of Defendant's account holders, including Plaintiff and the members of the Account Balance Class, are subject to the Contract.

**ANSWER:** Central State Bank affirmatively states that Plaintiff has not attached the contract that serves as the basis for his claim to the Complaint.  Central State Bank affirmatively states its agreements with accountholders are governed by a contract, just not the documents attached by Plaintiff to his Complaint.  Central State Bank denies the allegations in Paragraph 82.

83.    All contracts entered by Plaintiff and the Account Balance Class are identical or substantively identical because Defendant's form contracts were used uniformly.

**ANSWER:**  Central State Bank affirmatively states that Plaintiff has not attached the contract that serves as the basis for his claim to the Complaint.  Central State Bank affirmatively states its agreements with accountholders are governed by a contract, just not the documents attached by Plaintiff to his Complaint.  Central State Bank denies the allegations in Paragraph 83.

84.    Defendant misconstrued in the Contract its true fee practices and breached the express terms of the Contract.

**ANSWER:** Central State Bank affirmatively states that Plaintiff has not attached the contract that serves as the basis for his claim to the Complaint.  Central State Bank affirmatively states its agreements with accountholders are governed by a contract, just not

the documents attached by Plaintiff to his Complaint.  Central State Bank denies the allegations in Paragraph 84.

84.    85.    No contract provision authorizes Defendant to charge OD Fees on transactions that did not overdraw the account.

**ANSWER:**  Central State Bank affirmatively states that Plaintiff has not attached the contract that serves as the basis for his claim to the Complaint.  Central State Bank affirmatively states its agreements with accountholders are governed by a contract, just not the documents attached by Plaintiff to his Complaint.  Central State Bank denies the allegations in Paragraph 85.

86.    Defendant breached the terms of its Contract by charging OD Fees on transactions that did not overdraw the account.

**ANSWER:**  Central State Bank affirmatively states that Plaintiff has not attached the contract that serves as the basis for his claim to the Complaint.  Central State Bank affirmatively states its agreements with accountholders are governed by a contract, just not the documents attached by Plaintiff to his Complaint.  Central State Bank denies the allegations in Paragraph 86.

87.    Plaintiff and members of the Account Balance Class have performed all, or substantially all, of the obligations imposed on them under the agreements.

**ANSWER:**  Central State Bank affirmatively states that the named Plaintiff did not honor the terms of his contract with Central State Bank because he negotiated checks without sufficient funds to pay them.  Central State Bank further affirmatively states that other accountholders have similarly failed to abide by the terms of their account agreements.  Central State Bank denies the allegations in Paragraph 87.

88.     Under Iowa law, good faith is an element of every contract between banks and/or credit unions and their customers because banks and credit unions are inherently in a superior position to their checking account holders and, from this superior vantage point, they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

**ANSWER:** The allegations in Paragraph 88 constitute a legal conclusion. To the degree a response is required, Central State Bank denies the allegations in Paragraph 88.

89.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

**ANSWER:** The allegations in Paragraph 89 constitute a legal conclusion. To the degree a response is required, Central State Bank denies the allegations in Paragraph 89.

90.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain and abuse of a power to specify terms.

**ANSWER:** Central State Bank denies the allegations in Paragraph 90.

91.     Defendant abused the discretion it granted to itself when it charged OD Fees on transactions that do not actually overdraw the account.

**ANSWER:** Central State Bank denies the allegations in Paragraph 91.

92.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

**ANSWER:**  Central State Bank denies the allegations in Paragraph 92.

93.    Defendant willfully engaged in the foregoing conduct for the purpose of (1) gaining unwarranted contractual and legal advantages; and (2) unfairly and unconscionably maximizing fee revenue from Plaintiff and other members of the Account Balance Class.

**ANSWER:** Central State Bank denies the allegations in Paragraph 93.

94.    Plaintiff and members of the Account Balance Class have sustained damages as a result of Defendant's breach of the parties' contracts and breaches of contract through violations of the covenant of good faith and fair dealing.

**ANSWER:** Central State Bank denies the allegations in Paragraph 94.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract including Breach of the Covenant of Good Faith and Fair Dealing)**
**(On Behalf of Plaintiff and the Multiple Fee Class)**

95.    Plaintiff incorporates by reference the preceding paragraphs.

**ANSWER:** Central State Bank incorporates its responses to Paragraph 1 through 94.

96.    Plaintiff and Defendant have contracted for banking services as embodied in Defendant's Contract. Exs. A-B.

**ANSWER:** Central State Bank affirmatively states that Plaintiff has not attached the contract that serves as the basis for his claim to the Complaint.  Central State Bank affirmatively states that Plaintiff does have a checking account with Central State Bank and that the checking account is governed by a contract, just not the documents attached by Plaintiff to his Complaint.  Central State Bank denies the allegations in Paragraph 96.

97.     All of Defendant's account holders, including Plaintiff and the members of the Multiple Fee Class, are subject to the Contract.

**ANSWER:** Central State Bank affirmatively states that Plaintiff has not attached the contract that serves as the basis for his claim to the Complaint.  Central State Bank affirmatively states its agreements with accountholders are governed by a contract, just not the documents attached by Plaintiff to his Complaint.  Central State Bank denies the allegations in Paragraph 97.

98.     All contracts entered by Plaintiff and the Multiple Fee Class are identical or substantively identical because Defendant's form contracts were used uniformly.

**ANSWER:** Central State Bank affirmatively states that Plaintiff has not attached the contract that serves as the basis for his claim to the Complaint.  Central State Bank affirmatively states its agreements with accountholders are governed by a contract, just not the documents attached by Plaintiff to his Complaint.  Central State Bank denies the allegations in Paragraph 98.

99.     Defendant misconstrued in the Contract its true fee practices and breached the express terms of the Contract.

**ANSWER:** Central State Bank affirmatively states that Plaintiff has not attached the contract that serves as the basis for his claim to the Complaint.  Central State Bank affirmatively states its agreements with accountholders are governed by a contract, just not the documents attached by Plaintiff to his Complaint.  Central State Bank denies the allegations in Paragraph 99.

100.     No contract provision authorizes Defendant to charge multiple fees on an item.

**ANSWER:** Central State Bank affirmatively states that Plaintiff has not attached the contract that serves as the basis for his claim to the Complaint. Central State Bank affirmatively states its agreements with accountholders are governed by a contract, just not the documents attached by Plaintiff to his Complaint. Central State Bank denies the allegations in Paragraph 100.

101.   Defendant breached the terms of its Contract by multiple fees on an item.

**ANSWER:** Central State Bank affirmatively states that Plaintiff has not attached the contract that serves as the basis for his claim to the Complaint. Central State Bank affirmatively states its agreements with accountholders are governed by a contract, just not the documents attached by Plaintiff to his Complaint. Central State Bank denies the allegations in Paragraph 101.

102.   Plaintiff and members of the Multiple Fee Class have performed all, or substantially all, of the obligations imposed on them under the agreements.

**ANSWER:** Central State Bank affirmatively states that the named Plaintiff did not honor the terms of his contract with Central State Bank because he negotiated checks without sufficient funds to pay them. Central State Bank further affirmatively states that other accountholders have similarly failed to abide by the terms of their account agreements. Central State Bank denies the allegations in Paragraph 102.

103.   Under Iowa law, good faith is an element of every contract between banks and/or credit unions and their customers because banks and credit unions are inherently in a superior position to their checking account holders and, from this superior vantage point, they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

**ANSWER:** The allegations in Paragraph 103 constitute a legal conclusion.  To the degree a response is required, Central State Bank denies the allegations in Paragraph 103.

104.    Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

**ANSWER:** The allegations in Paragraph 104 constitute a legal conclusion.  To the degree a response is required, Central State Bank denies the allegations in Paragraph 104.

105.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain and abuse of a power to specify terms.

**ANSWER:** Central State Bank denies the allegations in Paragraph 105.

106.    Defendant abused the discretion it granted to itself when it charged multiple fees on an item.

**ANSWER:** Central State Bank denies the allegations in Paragraph 106.

107.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

**ANSWER:** Central State Bank denies the allegations in Paragraph 107.

108.    Defendant willfully engaged in the foregoing conduct for the purpose of (1) gaining unwarranted contractual and legal advantages; and (2) unfairly and unconscionably maximizing fee revenue from Plaintiff and other members of the Multiple Fee Class.

**ANSWER**: Central State Bank denies the allegations in Paragraph 108.

109.    Plaintiff and members of the Multiple Fee Class have sustained damages as a result of Defendant's breach of the parties' contracts and breaches of contract through violations of the covenant of good faith and fair dealing

**ANSWER:** Central State Bank denies the allegations in Paragraph 109.

## REQUEST FOR RELIEF

Central State Bank denies that Plaintiff and the putative class have any valid claim for relief and denies that Plaintiff and the putative class are entitled to any of the relief requested. Central State Bank requests that the Court dismiss the Plaintiff's Complaint with prejudice and grant none of the relief requested therein.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof that Central State Bank would not otherwise bear, Central State Bank asserts the following affirmative defenses, reserving the right to supplement or amend these defenses as discovery proceeds.

## FIRST DEFENSE

Plaintiff fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, by failure of performance and/or failure to satisfy all conditions precedent to bringing this cause of action including failure to comply with the terms of his account agreement.

**THIRD DEFENSE**

Central State Bank affirmatively alleges that any payments/fees it received were for fair consideration.

**FOURTH DEFENSE**

Plaintiff's claims, and the claims of the putative class, are barred in whole or in part by the doctrine of laches.

**FIFTH DEFENSE**

Central State Bank intends to rely on the doctrine of offset and recoupment with respect to any members of the putative class.

**SIXTH DEFENSE**

Plaintiff's claims, and the claims of the putative class, are barred in whole or in part, by the doctrine of unclean hands.

**SEVENTH DEFENSE**

The Complaint is barred in whole or in part by the doctrine of preemption.

**EIGHTH DEFENSE**

Plaintiff, and the members of the putative class, failed to mitigate damages, if in fact any damages have been or will be sustained, and any recovery by Plaintiff and the putative class, must be diminished or barred.

**NINTH DEFENSE**

Central State Bank is not liable to Plaintiff or the putative class by reason of its compliance with applicable statutes, laws, regulations, and guidelines.

## TENTH DEFENSE

Central State Bank's liability in this action, if any, is limited by the language of the contracts as between the parties and/or the language of the account agreement.

## ELEVENTH DEFENSE

Plaintiff, and the putative class, consented to all of Central State Bank's alleged acts or omissions which allegedly give rise to this action and subsequently ratified that conduct by continuing to use their checking accounts after the allegedly improper fees were assessed.

## TWELFTH DEFENSE

Plaintiff, and the putative class, did not exercise ordinary care or prudence in connection with the transactions alleged in the Complaint and therefore Plaintiff is barred from recovery or, if there is any recovery, it must be proportionately reduced.

## THIRTEENTH DEFENSE

Plaintiff, and the putative class, are precluded from recovery because they accepted the benefits of the transaction.

## FOURTEENTH DEFENSE

Plaintiff's claims, and the putative class, are barred, in whole or in part, as a result of acts of third parties over whom Central State Bank had no control.

## FIFTEENTH DEFENSE

This action is barred, in whole or in part, by the voluntary payment doctrine.

## SIXTEENTH DEFENSE

This action is barred by the doctrine of unjust enrichment.

## SEVENTEETH DEFENSE

This action is barred because the claims are overbroad and the putative class is not entitled to any recovery.

## EIGHTEENTH DEFENSE

The case may not be certified as a class action pursuant to Federal Rule of Civil Procedure 32 or otherwise, because at a minimum, it fails to meet the requirements of a class action.

## NINETEENTH DEFENSE

This action is barred because Central State Bank acted in good faith and observed reasonable commercial standards of fair dealing in the trade when dealing with Plaintiff and the members of the putative class.

## TWENTIETH DEFENSE

Plaintiff's claims are barred, in whole or in part, because he acquiesced to the conduct complained of.

## TWENTY-FIRST DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff lacks standing to assert claims on his own behalf or on behalf of putative class members.

## JURY DEMAND

Defendant hereby demands a jury trial on all issues so triable.

By: /s/ Kevin J. Visser
Kevin J. Visser AT0008101
Paul D. Gamez AT0002806
Nicholas Petersen AT0012570
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
Telephone: (319) 366-7641
Facsimile: (319) 366-1917
Email: kvisser@spmblaw.com
pgamez@spmblaw.com
npetersen@spmblaw.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2024, I filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to all attorneys and parties of record.

/s/ Kevin J. Visser